UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    JOY L. IRONS                                      CASE NO. 04-63667
    JOSEPH N. IRONS

                           Debtors                Chapter 13
--------------------------------------------------------
APPEARANCES:

FELT, EVANS, PANZONE, BOBROW          EDWARD EARL, ESQ.
  & HALLACK                                Of Counsel
Local Counsel for eCast Settlement Corp.
4-6 North Park Row
Clinton, NY 13323

BECKET & LEE, LLP
Counsel for eCast Settlement Corp.
16 General Warren Boulevard
P.O. Box 3001
Malvern, PA 19355

LYNN HARPER WILSON, ESQ.
Staff Attorney for Chapter 13 Trustee
250 South Clinton Street, Suite 203
Syracuse, NY 13202

PETER A. ORVILLE, ESQ.
Attorney for Debtors
30 Riverside Drive
Binghamton, NY 13905


Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**


      Presently under consideration by the Court is a motion filed by Joy L. Irons, f/k/a Joy L.

Chamber, and Joseph N. Irons (collectively the "Debtors"), on April 19, 2005, objecting to three

proofs of claims that were filed by eCAST Settlement Corporation ("eCAST"). On May 2, 2005, eCAST filed opposition to the Debtors' motion with respect to Claim Nos. 5, 9 and 12.

The motion was originally scheduled to be heard on May 10, 2005, in Binghamton, New York. After hearing oral argument on that date, the Court adjourned the motion to June 7, 2005, to allow eCAST an opportunity to file an additional memorandum of law. On June 7, 2005, the Court again heard oral argument on the Debtors' motion and agreed to adjourn it again in order to allow the Debtors an opportunity to respond to eCAST's memorandum of law. The Court further indicated that if, after reading Debtors' response it needed to hear further oral arguments from the parties, it would do so on July 12, 2005. Without hearing further oral argument, the Court took the matter under submission on July 12, 2005.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (B) and (O).

## FACTS

Debtors filed a voluntary Chapter 13 petition (the "Petition") on May 21, 2004. Of relevance to the motion herein is the fact that the Debtors listed in their schedules unsecured debts owed to Household Bank ("Household") in the amount of $710, Chase Manhattan Bank USA ("Chase") in the amount of $3,853.04 and Wal-Mart in the amount of $350. *See* Schedule F of

Debtors' Petition.

*Claim No. 5*

According to eCAST, on or about November 19, 2001, Household sold and assigned its claim against the Debtors to eCAST. On May 4, 2004, eCAST filed a Joint Notice of Transfer of Claim pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") and Waiver of Opportunity to Object. The only transactional documentation filed by eCAST provided that "certain" claims of Household were transferred, without specific claims being identified in the documentation. On July 2, 2004, eCAST filed a proof of claim on behalf of "Household Bank and its Assigns" in the amount of $724.14. Attached to the proof of claim was an unsigned statement ("Authorization Statement"), which included the following:

> By written agreement between Creditor and eCAST Settlement Corporation, eCAST Settlement Corporation has been authorized to file this proof of claim as agent for Creditor pending the Creditor's charge-off of the account and the transfer of the title to the account to eCAST Settlement Corporation. Creditor has further authorized eCAST Settlement Corporation to receive notices and payments with respect to this claim on Creditor's behalf, to be allocated pursuant to the terms of such agreement.

In addition, eCAST attached an "Account Summary" to its proof of claim which provided the following information:

Account Number: ************5284
Account Type: Credit Card

| Statement Date: | Balance: |
|---|---|
| May 23, 2004 | $802.99 |
| April 23, 2004 | $724.14 |
| March 23, 2004 | $646.99 |
| February 23, 2004 | $572.70 |
| January 23, 2004 | $576.55 |
| December 23, 2003 | $528.00 |

eCAST circled the statement dated April 23, 2004 and the corresponding $724.14 balance, with a notation that "[t]he above account information was derived from the information contained in the account database of Household Bank and its Assigns, as well as information from other sources, including the Bankruptcy Court." *Id*.

*Claim No. 9*

According to eCAST, on or about February 28, 2003, Chase sold and assigned its claims against the Debtors to eCAST. On May 4, 2004, eCAST filed a Joint Notice of Transfer of Claim pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") and Waiver of Opportunity to Object. The only transactional documentation filed by eCAST provided that "certain" claims of Chase were transferred, without specific claims being identified in the documentation with respect to the Debtors. On July 15, 2004, eCAST filed a proof of claim on behalf of Chase in the amount of $3,853.04. Attached to the proof of claim was a similar Authorization Statement, as had been attached to Claim No. 5. In addition, eCAST attached an "Account Summary" to its proof of claim which provided the following information:

Account Number:  ************4581
Account Type: Credit Card

| Statement Date: | Balance: |
| --- | --- |
| June 10, 2004 | $3,853.04 |
| May 13, 2004 | $3,853.04 |
| May 12, 2004 | $3,853.04 |
| April 12, 2004 | $3,853.04 |

eCAST circled the statement date of May 13, 2004, along with the corresponding $3,853.04 balance, with a similar notation to that of Claim No. 5 concerning the source of the account information being that of the account database of Chase Manhattan Bank USA NA.

*Claim No. 12*

  eCAST asserts that General Electric//Wal-Mart (collectively "Wal-Mart") sold and assigned their claim against the Debtors to eCAST sometime between February 22, 2003 and March 23, 2003. Transactional documentation filed by eCAST contains only the signature page from an agreement between eCAST and Wal-Mart, which provides that "receivables" were transferred without a specific reference to a claim against the Debtors. On August 30, 2004, eCAST filed a proof of claim as "assignee of General Electric/Wal-Mart" in the amount of $527.95. Attached to the proof of claim is an "Accounting Summary," which provided the following information:

Account Number: ***********2003
Account Type: Credit Card

Balance at Filing Date: $527.95

  The Accounting Summary contains a notation that "[t]he assignor has verified that the balance recorded above is the balance of the account as of the filing date of the bankruptcy and does not include post petition interest, fees or other charges." It also contains a notation that the account information was derived from the information contained in the account database of the "assignor."

## **ARGUMENTS**

*Debtors' Arguments*

  Debtors assert six grounds in support of their objection to Claim Nos. 5, 9 and 12, namely,

that 1) eCAST did not comply with proof of claim standards; 2) the three claims are not prima facie valid; 3) eCAST is attempting to apply chapter 11 claim procedures to a chapter 13 case; 4) the claims should be construed as late filed claims or claims that were not filed; 5) allowing the three claims would penalize creditors who filed proper claims; and 6) eCAST cannot prove the validity of the three claims under state law.

Debtors first argue that for an unsecured claim to be allowed, the unsecured creditor must: 1) file a proof of claim pursuant to Fed.R.Bankr.P. 3002(a), and 2) the proof of claim must meet the requirements of Fed.R.Bankr.P. 3001. Debtors further point out that Fed.R.Bankr.P. 3001 designates Official Form B10 as the approved proof of claim form. According to the written instructions located on the reverse side of Form B10, supporting documents are to be attached to the form. Debtors acknowledge that Official Form B10's written instructions allow a creditor to submit a summary of documents if the documents are too lengthy. However, the Debtors argue that if a creditor files a written statement as a proof of claim, in lieu of the Official Form B10, the "proof of claim shall conform substantially to the appropriate Official Form." Fed.R.Bankr.P. 3001(a). In addition, if the claim is based on a writing, an original or duplicate or statement of the circumstances under which the writing was lost or destroyed shall be filed with the proof of claim according to Fed.R.Bankr.P. 3001(c). Fed.R.Bankr.P. 3001(f) provides that a properly filed proof of claim receives prima facie validity; however, Debtors argue that "the proof of claim must set forth facts necessary to support the claim" to be properly filed, citing 8 L. KING, COLLIER ON BANKRUPTCY § 3001.05 (15th ed. 1988).

Debtors' second argument is that eCAST's claims lack prima facie validity. Debtors focus on the fact that eCAST did not attach the cardholder agreement, account history, record of

charges and payments, and other documents that would support Claim Nos. 5, 9 and 12 to its proofs of claim. Debtors argue that while eCAST's proofs of claim provide a toll free number to request further documentation, eCAST refused to provide the additional documentation and, instead, asks this Court to rule based upon the information already provided. Debtors further argue that eCAST is attempting to supplant the requirements of the Bankruptcy Rules because it feels it would be unduly time consuming and burdensome to comply.

Debtors' third argument is that eCAST is attempting to apply chapter 11 claim procedures to a chapter 13 case. Debtor argues that eCAST's position that a creditor is not required to support the claim unless the claim is listed as disputed, contingent, or unliquidated in the schedules specifically relates to chapter 11 cases as set forth in Fed.R.Bankr.P. 3003(b)(1), not to chapter 13 cases.

Debtors' fourth argument is that eCAST's claims are analogous to late filed claims or claims that were not filed. Debtors note that even when a debtor lists a claim within his/her schedules, a chapter 13 trustee will not pay a claim for which no proof of claim is filed or is filed untimely. Debtors argue that eCAST has not provided any information that was not otherwise provided within the Debtors' schedules. It is the Debtors' position that if the Court were to accept the information in their schedules as a basis for validating the claims of creditors, there would not be any need for creditors to supply proper documentation in support of their claims.

Debtors' fifth argument is that allowing eCAST's claims would penalize creditors who filed proper proofs of claim. Debtors argue that the chapter 13 payments are earmarked to pay unsecured debt, and allowing claims of creditors that have not complied with the Bankruptcy Rules would penalize creditors that followed those Rules.

8

Citing to *Grogan v. Garner*, 498 U.S. 279 (1991), Debtors' final argument is that the determination of the validity of a claim is based on state law. Based on the documentation provided by eCAST, it would be unable to establish the validity of its claims.

*eCAST's Argument*

eCAST asserts a number of arguments in opposition to the Debtors' objections alleging that: 1) Claims Nos. 5, 9 and 12 are fully compliant with the requirements of Fed.R.Bankr. P. 3001(a); 2) that they are sufficiently supported by documentation; 3) that the law disallows only those claims that are excepted by statute; 4) the law grants prima facie validity to a properly filed proof of claim and preserves it against nonsubstantive, formal assault; 5) Debtors acknowledged the validity of their debts by listing them in Schedule F, attached to their Petition; 6) the Court should determine the amount of the claims; 7) proofs of claim need not include documentary evidence of assignment or transfer; and 8) the Court should uphold the claims in accord with the equities of the case. With respect to its first argument, eCAST relies on a decision from the United States Bankruptcy Court for the Northern District of Texas that stated "[a] proof of claim for an unsecured creditor requires little more than a listing of name, address, amount of claim . . .and a signature. It should take less than 5 minutes to fill out." *In re Great W. Cities, Inc.*, 88 B.R. 109, 114 (Bankr. N.D. Tex. 1988). eCAST acknowledges that its proofs of claim do not match the official form; however, it argues that in accordance with Fed.R.Bankr.P. 3001(a) it only needs to conform substantially to the official form. eCAST argues that its proofs of claim are in summary form and provide the necessary information to allow the Debtors to identify the claimant, the accounts and the amounts being claimed, and as such, they meet the official form

requirements. eCAST further notes that each summary contains a toll free phone number that Debtors could have used to receive additional information.

eCAST's second argument is that the claims are sufficiently supported by documentation. eCAST cites *In re Hughes*, 313 B.R. 205 (Bankr. E.D. Mich. 2004), which states that "[t]he purpose of the rules regarding claims is to require creditors to provide sufficient information so that a Debtor may identify the creditor and match the creditor and the amount of the claim with the claims scheduled by the Debtor[s]." *Id*. at 212.

eCAST's third argument is that the Bankruptcy Code only disallows claims that are excepted by statute. eCAST contends that an objection that seeks disallowance of a claim for failure to conform to Fed.R.Bankr.P. 3001(c) is inadequate and may not be sustained based upon that Rule alone, citing *In re Cluff*, 313 B.R. 323, 330-31 (Bankr. D. Utah 2004) and *In re Dove-Nation*, 318 B.R. 147, 151, 153 (8th Cir. BAP 2004). eCAST further argues that the Debtors' objections fail to show a basis under 11 U.S.C. § 502(b)(1)-(9) for disallowance and should be overruled since inadequacy of supporting documentation is not a sufficient basis for denial.

eCAST's fourth argument is that the law grants prima facie validity to a properly filed proof of claim and preserves it against nonsubstantive formal assault. eCAST states that "if the proof of claim conforms with the rules it constitutes prima facie evidence of the claim." *Id*. at 152. In addition, eCAST argues that noncompliance with Fed.R.Bankr.P. 3001(c) merely removes the ability to use the proof of claim as prima facie evidence but does not invalidate the claim, relying on *In re Los Angeles Int'l Airport Hotel Associates*, 196 B.R. 134, 139 (9th Cir. BAP 1996), *aff'd*, 106 F.3d 1479 (9th Cir. 1997). eCAST asserts that the mere imposition of an objection, without more, does not provide evidence to defeat a proof of claim. *Whitney v.*

10

*Dresser*, 200 U.S. 532, 535 (1906); *In re Circle J Dairy, Inc.,* 112 B.R. 297, 299 (W.D. Ark. 1989). Consequently, eCAST asks this Court to overrule the Debtors' objections since they are based solely on form.

eCAST's fifth argument is that the Debtors' acknowledged the validity of their debts by listing them in their Petition within Schedule F of unsecured claims. eCAST argues that the Debtors' voluntarily listing of their debts constitutes a judicial admission of the debts owed at the time their Petition was filed, citing *In re Gervich*, 570 F.2d 247, 253 (8th Cir. 1978); eCAST argues that a prima facie case for the Debtors' liability on the claims was established when the Debtors admitted the debts by listing them within their schedules. *See In re Jorczak*, 314 B.R. 474, 483 (Bankr. D. Conn. 2004) (stating that the admission in the debtors schedules should be interpreted as some evidence of the debtors' liability); *In re Standfield*, 152 B.R. 528, 531 (Bankr. N.D. Ill. 1993); *In re Leonard*, 151 B.R. 639, 643 (Bankr. N.D.N.Y. 1992).

eCAST's sixth argument is that this Court should determine the amount of the claims if in dispute. eCAST states that it is the duty of the Bankruptcy Court, when presented with a dispute, to determine the correct amount of the claim, citing *In re Burnett*, 306 B.R. 313, 317 n.8 (9th Cir. BAP. 2004), *aff'd*, 435 F.3d 971 (9th Cir. 2006). Further, eCAST argues that disallowance of a claim is not a remedy for a defective proof of claim containing an inaccurate amount, and that if the proof of claim is determined to be defective as to amount, this Court should determine the correct amount of the claim.

eCAST's seventh argument is that the proof of claim does not need to include documentary evidence of assignment or transfer. eCAST argues that under FED.R.BANKR.P. 3001(e)(1), a proof of claim for a claim that has been assigned or transferred, other than for

11

security before filing, may only be filed by the transferee, which for the purposes of Claim Nos. 5, 9 and 12 would be eCAST. It is further argued that the 1991 amendments to Fed.R.Bankr.P. 3001(e) removed the requirement for proof of sale or assignment of the debt and disclosure of the consideration paid for the debt. In addition, eCAST asserts that under Fed.R.Bankr.P. 3001(e)(2) the transferee is required to file notice of the transfer, rather than the transactional transfer documents. Upon the court's notification by the transferee, the clerk is required to notify the transferor, who in turn has twenty days to object to the transfer. *In re Viking Assocs., L.L.C. v. Drewes*, 120 F.3d 98, 102 (8th Cir. 1997). Accordingly, eCAST further contends that they were not required to attach documentation of the transfers of Claim Nos. 5, 9 and 12 to their proofs of claim because the transfers occurred prepetition.

eCAST's eighth and final argument is that the Court should uphold the claims in accord with the equities of the case. eCAST asserts that disallowing otherwise valid claims on a technical basis is inherently unfair, pointing out that the Debtors have not provided a substantive basis for their objections, and there is no evidence that suggests the debts are not owed by the Debtors. eCAST cites the *Cluff* court's opinion that "[t]he debtors' acknowledgment of the debts in the original schedules coupled with the [d]ebtors' failure to come forward with some evidence that would challenge the proofs of claim leads this [c]ourt to question their good faith intentions." *Cluff*, 313 B.R. at 342. eCAST opines that the controversy in question is clear, and under the equities of the cases, it asks this Court to overrule Debtors' objections to their claims.

Finally, eCAST asserts that since there is no basis in the law, Rules, or equities of bankruptcy to support the Debtors' objections, and no showing of a violation of Fed.R.Bankr.P. 3001(b), the Debtors' cross-motion for attorney's fees should be denied.

**DISCUSSION**

A claim is a "right to payment ... or ... right to an equitable remedy." 11 U.S.C. § 101(5). Creditors with claims for payment or equitable relief may file a proof of claim. 11 U.S.C. § 501(a). The controversy in this case centers on Fed.R.Bankr.P. 3001, which outlines the procedures for filing a proof of claim. Under subsection (a) "[a] proof of claim is a written statement setting forth a creditor's claim . . . [which] shall conform substantially to the appropriate Official Form." Fed.R.Bankr.P. 3001(a). The proof of claim can only be executed by the creditor or the creditor's authorized agent. Fed.R.Bankr.P. 3001(b). In addition, "[i]f a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee." Fed.R.Bankr.P. 3001(e)(1). And if the claim is based upon a writing, an original or duplicate must be included or a statement outlining circumstances that caused the writing to be lost or destroyed. Fed.R.Bankr.P. 3001(c). A proof of claim executed and filed in accordance with Fed.R.Bankr.P. 3001 "shall constitute prima facie evidence of validity and amount of the claim." Fed.R.Bankr.P. 3001(f). In order to overcome this prima facie evidence, the objecting party must provide evidence that disproves at least one of the essential elements of the claim. *In re Ernst,* 333 B.R. 666, 672 (S.D.N.Y. 2005), citing *In re Reilly*, 245 B.R. 768, 773 (2d Cir. BAP 2000).

The Court's initial inquiry focuses on whether eCAST's proofs of claim substantially conform to the Official Form 10. While this is an issue of first impression in this Court, eCAST cites dicta in *Gulf States Steel* that "'[a] proof of claim for an unsecured creditor requires little more than listing a name, address, amount of claim . . . and a signature. It should take less than

five minutes to fill out.'" *LTV Corp. v. Gulf States Steel, Inc.* 969 F.2d. 1050, 1058 (D.C. Cir. 1992), quoting *Great W. Cities, Inc.*, 88 B.R. at 114.  In a simplistic application, this Court might be convinced that such an approach is sufficient; however, the controversy *sub judice*, while far from complex, is not a simple claim.  The Debtors are faced with evaluating the amount owed, which includes late fees and complicated interest calculations.  The Debtors are further tasked with matching a prior creditor with eCAST, who allegedly acquired a number of the Debtors' accounts.

In this regard, the case law is split with regard to whether the writing, on which a claim is based in a case such as this, is the credit card agreement, the transactional record of each charge, or both the credit card agreement and a record of each transaction that is related to the claim.  *See, e.g.,* Cluff, 313 B.R. at 334 (stating that "it is not the underlying credit card agreement that creates the debt . . . it is the actual use of the credit card that creates the obligation to repay"); *In re Henry*, 311 B.R. 813, 817 (Bankr. W.D. Wash. 2004) (noting that debts resulting from credit cards rely on the credit card agreement as the writing); *Hughes*, 313 B.R. at 210; *In re Relford*, 323 B.R. 669, 673 (Bankr. S.D. Ind., 2004) (indicating that a claim resulting from a credit card "is based on both the credit card agreement and proof of the credit card's actual use," and both should be included with a creditor's proof of claim).  Requiring transactional data for every transaction that the creditor has included within their claim could become so voluminous as to burden the parties involved.  In such an instance, courts have allowed summaries of the writings that created the debt.  *See Henry*, 311 B.R. at 819; *Cluff*, 313 B.R. at 335; *In re Heath*, 331 B.R. 424, 432 (9th Cir. BAP 2005).  However, while a summary may suffice, a creditor is still required to produce documentation upon request.  *See Relford*, 323 B.R. at 673.

14

The Court is inclined to agree with *Relford* that the underlying documentation for claims involving credit card debt comprises both the underlying credit card agreement, which states late fees, interest rate and other relevant information, along with the individual transactional data generated upon a debtor's use of the credit card, both of which, should be provided in summary form when the records approach a voluminous level. The voluminous level shall be determined based upon the facts associated with the specific claim. From the facts presented, it was proper for eCAST to file a summary of the underlying writings. In this case, the Debtors have not disputed the debts and requiring that the credit card agreement and copies of each of the Debtors' relevant credit card transactions be filed with this Court appears unnecessary under the circumstances.

When a debtor or trustee requests in good faith the underlying writings that were used to create the summary, a creditor shall provide said writings to the debtor or trustee in a timely fashion. In this instance, the Debtors have alleged that eCAST refused to provide additional documentation, despite Debtors' objection to their claim. The Debtors have not denied the debts owed, nor have Debtors argued reasons for additional information beyond Debtors' contention that they were without specific knowledge to dispute the amount or the validity of the claims.

The Court is inclined to follow the reasoning of the *Cluff* court that a summarization prepared for a proof of claim should:

> (i) include the amount of the debts; (ii) indicate the name and account number of the debtor; (iii) be in the form of a business record or some other equally reliable format; and (iv) if the claim includes charges such as interest, late fees and attorney's fees, the summary should include a statement giving the breakdown of those elements.

*Cluff*, 313 B.R. at 335.

eCAST's proofs of claim have sufficiently satisfied the first three requirements in *Cluff*, and the Court concludes that the proofs of claim constitute prima facie evidence of the validity of the claims. However, eCAST has not satisfied the fourth requirement in that it has not provided the Debtors with a breakdown of interest and late fee calculations, etc. Therefore, the proofs of claim do not constitute prima facie evidence of the amount of the claims. However, they are some evidence of eCAST's claims and, in the absence of any evidence to contradict the amounts of the claims, there is no basis to disallow the claims pursuant to Code § 502(b). *Id.* at 338; *Dove-Nation*, 318 B.R. at 152.

This Court will not go so far as to conclude that Debtors are acting in bad faith in making their request to disallow Claim Nos. 5, 9 and 12 since eCAST has not provided proper summaries for them. The summaries provided by eCAST merely state balances, without separately explaining the interest and late fees associated with the Debtors' accounts. If the Debtors dispute the amounts of the claims, they are certainly within their rights to file an objection on that basis. In which case, as eCAST suggests, the Debtors will be the entitled to an evidentiary hearing before this Court. At that hearing, eCAST's proofs of claim will not be entitled to prima facie evidence of their amounts.

Debtors' final argument rests on their contention that allowing eCAST's claims to be paid would be detrimental to other creditors. The Court certainly has an obligation to protect the rights of all parties in interest and while other unsecured creditors may receive less than they would if eCAST's claims were disallowed, eCAST has a right to payment on the claims it has acquired. The Court will not disallow eCAST's claims solely based on procedural deficiencies. *See In re Guidry*, 321 B.R. 712 (Bankr.N.D.Ill. 2005). Accordingly, while in this instance, eCAST has not

16

provided prima facie evidence of the amount of its claims, the fact is that the Debtors have not objected to the amount of the claims or offered some other substantive objection; therefore, the Court finds no basis at this juncture to disallow Claim Nos. 5, 9 and 12.

Based on the foregoing, it is hereby

ORDERED that the Debtors' motion seeking disallowance of Claim Nos. 5, 9 and 12, filed by eCAST, is denied; it is further

ORDERED that the Debtors' request for attorney's fees in the amount of $300 to be paid through the Debtors' Plan is granted.

Dated at Utica, New York

this 13th day of March 2006

/s/ Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge